FILED
CLERK, U.S. DISTRICT COURT

12/17/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: \_\_\_\_MMC\_\_\_\_ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. 2:24-CR-00751-MWC |
|---|---|
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 242: Deprivation of Rights Under Color of Law] |
| JOSEPH BENZA III, | |
| Defendant. | |

The United States Attorney charges:

[18 U.S.C. § 242]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

**(1)  General Background**

1. The Los Angeles Sheriff's Department ("LASD") was a state law enforcement agency within the Central District of California. Among other responsibilities, LASD provided municipal police services within Los Angeles County, California, through its thousands of sworn officers.

2. Defendant JOSEPH BENZA III was a sworn law enforcement officer and LASD deputy assigned to work at LASD's Norwalk Station in

Norwalk, California.  Defendant BENZA was approximately 5'6" and 225 pounds.

3. Victim E.B. was a 23-year-old transgender man and high school teacher.  Victim E.B. was approximately 5'4" and 115 pounds.

4. Sergeant 1 was a sworn law enforcement officer and LASD sergeant assigned to work at LASD's Norwalk Station.  Sergeant 1 was defendant BENZA's direct supervisor and was responsible for, among other things, reviewing and approving defendant BENZA's incident reports.

5. Sergeant 2 was a sworn law enforcement officer and LASD sergeant assigned to work at LASD's Norwalk Station.

6. Sergeant 3 was a sworn law enforcement officer and LASD sergeant assigned to work at LASD's Norwalk Station.

7. Deputy A was a sworn law enforcement officer and LASD deputy assigned to work at LASD's Norwalk Station.

8. Deputy B was a sworn law enforcement officer and LASD deputy assigned to work at LASD's Norwalk Station.  Deputy B was assigned to the same team as defendant BENZA and was also under the supervision of Sergeant 1.

9. Deputy C was a sworn law enforcement officer and LASD deputy assigned to work at LASD's Norwalk Station.

10. Deputy D a sworn law enforcement officer and LASD deputy assigned to work at LASD's Norwalk Station.

11. The Federal Bureau of Investigation ("FBI") was a component of the United States Department of Justice, a department within the executive branch of the United States government, whose jurisdiction included, among other things, investigation of criminal violations of

federal civil rights laws, including Title 18, United States Code, Section 242.

### (2) Defendant BENZA's Use of Excessive Force Against Victim E.B. in Retaliation for Victim E.B.'s First Amendment-Protected Activity

12.  On or about February 10, 2023, defendant BENZA was responding to calls for service in Whittier, California as part of his official duties for LASD. Defendant BENZA was wearing his full LASD uniform and driving a marked LASD sports utility vehicle (the "SUV").

13.  At approximately 12:20 p.m. that day, defendant BENZA confirmed he was en route to respond to a call for service regarding a potential domestic violence disturbance.

14.  Thereafter, defendant BENZA encountered Victim E.B., who had left the school where he worked in a black Honda Civic, and was driving through the residential area of Mystic Street and Guilford Avenue in Whittier.

15.  As Victim E.B. drove past defendant BENZA, defendant BENZA saw Victim E.B. extend his middle finger at defendant BENZA. The gesture of extending one's middle finger at, colloquially known as "flipping off" or a "flip off," a law enforcement officer is an activity protected by the First Amendment of the Constitution of the United States.

16.  In response to seeing Victim E.B.'s gesture, defendant BENZA abandoned the call for service he had confirmed and instead began closely following Victim E.B. In pursuing Victim E.B., defendant BENZA drove through the residential neighborhood, at certain points reaching speeds over 50 miles per hour. Defendant

BENZA followed Victim E.B. for approximately 1.8 miles without attempting to stop or pull over Victim E.B.

17.  As defendant BENZA chased after Victim E.B., defendant BENZA called Deputy A.  During the call, defendant BENZA told Deputy A that someone had just flipped him off and that defendant BENZA was going to conduct a traffic stop of that person.  Because defendant BENZA intended to use force against Victim E.B., defendant BENZA further asked Deputy A to start driving towards defendant BENZA's location.

18.  While defendant BENZA pursued Victim E.B., Victim E.B. called 911 to report that he was being followed.  Victim E.B. advised the operator that he had not been stopped or ordered to pull over and asked the operator to verify whether the car that was following him was a real police car.

19.  Victim E.B. eventually pulled into the parking lot of a convenience store near the intersection of Mulberry Drive and Mills Avenue and parked his car in a designated parking spot.  Defendant BENZA followed Victim E.B. into the parking lot, parked his SUV behind Victim E.B.'s car, and then activated the SUV's overhead lights.

20.  Defendant BENZA approached Victim E.B., who was exiting Victim E.B.'s car.  Defendant BENZA told Victim E.B. that defendant BENZA had stopped Victim E.B.  Victim E.B. denied that defendant BENZA had stopped Victim E.B.  Without giving any commands to Victim E.B., defendant BENZA then grabbed Victim E.B.  Victim E.B. pulled away from defendant BENZA and said, "Don't touch me."  Defendant BENZA then violently body slammed Victim E.B. onto the ground.  Once Victim E.B. was on the ground, defendant BENZA mounted Victim E.B.,

punched Victim E.B.'s head and face multiple times, and pressed Victim E.B.'s face into the pavement. Victim E.B. repeatedly screamed for help and shouted, "You're going to kill me!"; "I can't breathe!"; and "Please stop!"

21. As a result of defendant BENZA's assault of Victim E.B., Victim E.B. sustained a concussion, contusions, and abrasions, and experienced vomiting and head pain.

### (3) Defendant BENZA's Falsification of His Incident Report to Conceal His Retaliation and Excessive Force Against Victim E.B.

22. On or about February 10, 2023, at the Norwalk Station, defendant BENZA began preparing his LASD incident report regarding his traffic stop of, and use of force against, Victim E.B. (the "Incident Report"). Defendant BENZA discussed with Deputy B and Sergeant 1 whether to include in the Incident Report why defendant began following Victim E.B., that is, because Victim E.B. flipped off defendant BENZA. Sergeant 1 counseled defendant BENZA to omit that fact from the Incident Report.

23. Between February 10 and February 11, 2023, defendant BENZA, aided and abetted by Sergeant 1, prepared the final version of the Incident Report, which was assigned Uniform Report Number ("URN") 023-01746-0492-057.

24. To conceal defendant BENZA's violations of Victim E.B.'s constitutional rights and to create the misleading impression that defendant BENZA's use of force was justified, defendant BENZA, aided and abetted by Sergeant 1, prepared a false and misleading Incident Report that (a) omitted any reference to Victim E.B.'s flip-off; (b) misleadingly stated that defendant BENZA conducted the traffic

5

stop of Victim E.B. for obstructed driver view, in violation of the California Vehicle Code, based on a tree-shaped air freshener hanging from the rearview mirror of Victim E.B.'s car; and (c) cited Victim E.B. with mayhem, in violation of California Penal Code section 203, by falsely claiming, among other things, that Victim E.B. had bitten defendant BENZA's hand, clenched Victim E.B.'s teeth down with enough force to puncture defendant BENZA's skin, and attempted to rip defendant BENZA's skin from his hand.

25. In addition to disclosing to Sergeant 1 that defendant BENZA had seen the flip-off, defendant BENZA also disclosed that fact to Sergeant 2 and Sergeant 3. Sergeant 2 and Sergeant 3 counseled defendant BENZA to omit that fact from the Incident Report.

**(4)  Defendant BENZA's Additional Obstructionist Conduct**

26. On February 13 and 14, 2023, defendant BENZA and Sergeant 1 discussed whether Victim E.B. had recorded the flip-off on Victim E.B.'s cellphone. Defendant BENZA reassured Sergeant 1 that he had looked at Victim E.B.'s cellphone after his use of force 8and did not see a recording of the flip-off.

27. In July 2023, various media outlets reported on defendant BENZA's use of force against Victim E.B.

28. On July 23, 2023, defendant BENZA exchanged group text messages with Deputy C and Deputy D about the media reports and the anticipated federal investigation of defendant BENZA. Defendant BENZA, Deputy C, and Deputy D discussed the need to delete text messages on their personal cellphones in light of the anticipated federal investigation.

29. Three days later, on July 26, 2023, Deputy C sent a text message to the same group to relay Sergeant 1's instruction for

defendant BENZA to "toss the phone," a directive to delete data from defendant BENZA's personal cellphone.

30. Before Deputy C's interview with the FBI and the United States Attorney's Office ("USAO") in September 2024, Deputy C and defendant BENZA discussed lying to federal authorities in order to provide an innocuous explanation for their text messages about Sergeant 1's directive to "dump" the cellphone, including to falsely characterize the message as an instruction to "dump" the cellphone into the cloud to preserve the data. Deputy C later confirmed to defendant BENZA that Deputy C planned to adopt that false explanation when speaking with federal authorities.

**(5) Defendant BENZA's False Statements**

31. On January 30, 2024, during an interview with the FBI and the USAO, during which defendant BENZA was advised, in the presence of counsel, that making materially false statements to the government was a crime, defendant BENZA falsely stated that: (a) he had not seen Victim E.B. or anyone else flip him off; (b) Victim E.B. had bitten him; and (c) he had not discussed substantively the contents of the Incident Report with anyone as he drafted it. In fact, as defendant BENZA then knew, (a) defendant BENZA had seen Victim E.B. flip him off and had retaliated against Victim E.B. with excessive force because of it; (b) defendant BENZA knew Victim E.B. had not bitten him; and (c) defendant BENZA had substantively discussed the Incident Report with others, including with Sergeant 1, and specifically discussed the decision to omit from the Incident Report the fact that Victim E.B. had flipped off defendant BNEZA and to charge Victim E.B. with mayhem. Defendant BENZA also knew that Sergeant 1 had drafted substantive portions of the incident report for defendant BENZA.

7

B.  DEPRIVATION OF RIGHTS UNDER COLOR OF LAW

32.  On or about February 10, 2023, in Los Angeles County, within the Central District of California, defendant JOSEPH BENZA III, a sworn law enforcement officer employed by LASD, while acting under color of law, assaulted Victim E.B., which resulted in bodily injury to Victim E.B., in retaliation for Victim E.B. extending his middle finger at defendant BENZA, and thereby willfully deprived Victim E.B. of the rights secured and protected by the Constitution and laws of the United States, namely: (1) the right to be free from retaliation based on activity protected by the First Amendment, and (2) the right to be free from the use of unreasonable and unnecessary force by a law enforcement officer.

E. MARTIN ESTRADA
United States Attorney

*/s/ Mack E. Jenkins/*

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Public Corruption and
Civil Rights Section

CASSIE D. PALMER
Assistant United States Attorney
Deputy Chief, Public Corruption
and Civil Rights Section

SUSAN S. HAR
J. JAMARI BUXTON
Assistant United States Attorneys
Public Corruption and Civil
Rights Section