E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SUSAN S. HAR (Cal. Bar No. 301924)
J. JAMARI BUXTON (Cal. Bar No. 342364)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
        1500 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-3289
        Facsimile: (213) 894-0141
        E-mail:    susan.har@usdoj.gov
                   jamari.buxton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT

12/17/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____MMC_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

              v.

JOSEPH BENZA III,

        Defendant.

No. CR 2:24-CR-00751-MWC

PLEA AGREEMENT FOR DEFENDANT
JOSEPH BENZA III

    1.    This constitutes the plea agreement between JOSEPH BENZA
III ("defendant") and the United States Attorney's Office for the
Central District of California ("the USAO") in the above-captioned
case.  This agreement is limited to the USAO and cannot bind any
other federal, state, local, or foreign prosecuting, enforcement,
administrative, or regulatory authorities.

                    DEFENDANT'S OBLIGATIONS

    2.    Defendant agrees to:

          a.    Give up the right to indictment by a grand jury and,
at the earliest opportunity requested by the USAO and provided by the

Court, appear and plead guilty to the one-count information in the form attached to this agreement as Exhibit 1 or a substantially similar form, which charges defendant with Deprivation of Rights Under Color of Law, in violation of 18 U.S.C. § 242.

b.    Not contest the Factual Basis agreed to in this agreement.

c.    Abide by all agreements regarding sentencing contained in this agreement.

d.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.    Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.    Submit certificate to the State of California Commission on Peace Officer Standards and Training surrendering his California Peace Officer Standards and Training certification, if any, and not to seek to obtain a California Peace Officer Standards and Training certification in the future.

h.    Not seek future employment as a sworn law enforcement officer of any federal, state, or local government, including as a police officer, deputy sheriff, or peace officer.

i.    Not seek future employment that involves carrying of a firearm.

2

1          j.    Pay the applicable special assessment at or before the

2    time of sentencing unless defendant has demonstrated a lack of

3    ability to pay such assessment.

4          k.    Defendant agrees that any and all criminal debt

5    ordered by the Court will be due in full and immediately.  The

6    government is not precluded from pursuing, in excess of any payment

7    schedule set by the Court, any and all available remedies by which to

8    satisfy defendant's payment of the full financial obligation,

9    including referral to the Treasury Offset Program.

10         l.    Complete the Financial Disclosure Statement on a form

11   provided by the USAO and, within 30 days of defendant's entry of a

12   guilty plea, deliver the signed and dated statement, along with all

13   of the documents requested therein, to the USAO by either email at

14   usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

15   Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

16   Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

17   criminal debt shall be assessed based on the completed Financial

18   Disclosure Statement and all required supporting documents, as well

19   as other relevant information relating to ability to pay.

20         m.    Authorize the USAO to obtain a credit report upon

21   returning a signed copy of this plea agreement.

22         n.    Consent to the USAO inspecting and copying all of

23   defendant's financial documents and financial information held by the

24   United States Probation and Pretrial Services Office.

25    3.    Defendant further agrees to cooperate fully with the USAO,

26   the Federal Bureau of Investigation ("FBI"), and, as directed by the

27   USAO, any other federal, state, local, or foreign prosecuting,

28

3

1  enforcement, administrative, or regulatory authority.  This
2  cooperation requires defendant to:
3          a.   Respond truthfully and completely to all questions
4  that may be put to defendant, whether in interviews, before a grand
5  jury, or at any trial or other court proceeding.
6          b.   Attend all meetings, grand jury sessions, trials or
7  other proceedings at which defendant's presence is requested by the
8  USAO or compelled by subpoena or court order.
9          c.   Produce voluntarily all documents, records, or other
10 tangible evidence relating to matters about which the USAO, or its
11 designee, inquires.
12     4.   For purposes of this agreement: (1) "Cooperation
13 Information" shall mean any statements made, or documents, records,
14 tangible evidence, or other information provided, by defendant
15 pursuant to defendant's cooperation under this agreement or pursuant
16 to the letter agreements previously entered into by the parties dated
17 January 18, January 26, and November 6, 2024; and (2) "Plea
18 Information" shall mean any statements made by defendant, under oath,
19 at the guilty plea hearing and the agreed to Factual Basis statement
20 in this agreement.

21                    THE USAO'S OBLIGATIONS
22     5.   The USAO agrees to:
23          a.   Not contest the Factual Basis agreed to in this
24 agreement.
25          b.   Abide by all agreements regarding sentencing contained
26 in this agreement.
27          c.   At the time of sentencing, provided that defendant
28 demonstrates an acceptance of responsibility for the offense up to

4

and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.    Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of 18 U.S.C. §§ 371, 1519, and 1001 arising out of defendant's conduct described in the agreed-to factual basis set forth in Attachment A. Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.  Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

6.    The USAO further agrees:

a.    Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against defendant by the USAO, or in connection with any sentencing proceeding in any criminal case that may be brought against defendant by the USAO, any Cooperation Information. Defendant agrees, however, that the USAO may use both Cooperation Information and Plea Information: (1) to obtain and pursue leads to other evidence, which evidence may be used for any purpose, including any criminal prosecution of defendant; (2) to cross-examine defendant should defendant testify, or to rebut any evidence offered, or

argument or representation made, by defendant, defendant's counsel, or a witness called by defendant in any trial, sentencing hearing, or other court proceeding; and (3) in any criminal prosecution of defendant for false statement, obstruction of justice, or perjury.

       b.   Not to use Cooperation Information against defendant at sentencing for the purpose of determining the applicable guideline range, including the appropriateness of an upward departure, or the sentence to be imposed, and to recommend to the Court that Cooperation Information not be used in determining the applicable guideline range or the sentence to be imposed.  Defendant understands, however, that Cooperation Information will be disclosed to the United States Probation and Pretrial Services Office and the Court, and that the Court may use Cooperation Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

       c.   In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

       d.   If the USAO determines, in its exclusive judgment, that defendant has both complied with defendant's obligations under paragraphs 2 and 3 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines, and to recommend a term of imprisonment within this reduced range.

<u>DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION</u>

      7.   Defendant understands the following:

a.    Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b.    Nothing in this agreement requires the USAO or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c.    Defendant cannot withdraw defendant's guilty plea if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or if the USAO makes such a motion and the Court does not grant it or if the Court grants such a USAO motion but elects to sentence above the reduced range.

d.    At this time the USAO makes no agreement or representation as to whether any cooperation that defendant has provided or intends to provide constitutes or will constitute substantial assistance.  The decision whether defendant has provided substantial assistance will rest solely within the exclusive judgment of the USAO.

e.    The USAO's determination whether defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in which defendant testifies or in which the government otherwise presents information resulting from defendant's cooperation.

<u>NATURE OF THE OFFENSE</u>

8.    Defendant understands that for defendant to be guilty of the crime charged in count one, that is, Deprivation of Rights Under

7

Color of Law, in violation of Title 18, United States Code, Section 242, the following must be true:

        a.   First, Victim E.B. was in the State of California;

        b.   Second, defendant there deprived Victim E.B. of a right secured by the Constitution or laws of the United States, namely, the right to be free from the use of unreasonable force by a law enforcement officer or the right to be free from retaliation by a law enforcement officer based on activity protected by the First Amendment.

        c.   Third, defendant acted under color of law when depriving Victim E.B. of the constitutional right(s);

        d.   Fourth, defendant acted willfully to deprive Victim E.B. of such right(s); and

        e.   Fifth, bodily injury resulted from defendant's conduct.

    9.   With respect to a violation of Title 18, United States Code, Section 242 for the deprivation of the right to be free from retaliation by a law enforcement officer based on activity protected by the First Amendment, the following must also be true: (a) Victim E.B. was engaged in an activity protected by the First Amendment; (b) defendant took an adverse action against Victim E.B. that would chill a person of ordinary firmness from continuing in the activity; and (c) defendant would not have taken the adverse action but for the retaliatory motive.

<u>PENALTIES AND RESTITUTION</u>

    10.   Defendant understands that the statutory maximum sentence that the Court can impose for a felony violation of Title 18, United States Code, Section 242, is: 10 years' imprisonment; a 3-year period

of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

12.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

13.  Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under

9

some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

14.  Defendant understands that defendant will be required to pay full restitution to the victim of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those charges.

FACTUAL BASIS

15.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided in Attachment A hereto and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in

10

paragraph 17 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING FACTORS

16.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

17.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 14 | U.S.S.G. §§ 2H1.1(a)(1), 2A2.2(a) |
| Serious Bodily Injury: | +5 | U.S.S.G. § 2A2.2(b)(3) |
| Color of Law: | +6 | U.S.S.G. § 2H1.1(b)(1)(B) |
| Obstruction of Justice: | +2 | U.S.S.G. § 3C1.1 |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

18.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

11

19.    Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

20.    Defendant understands that by pleading guilty, defendant gives up the following rights:

    a.    The right to persist in a plea of not guilty.

    b.    The right to a speedy and public trial by jury.

    c.    The right to be represented by counsel – and if necessary have the Court appoint counsel – at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the Court appoint counsel – at every other stage of the proceeding.

    d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

    e.    The right to confront and cross-examine witnesses against defendant.

    f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

    g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

    h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF APPEAL OF CONVICTION AND COLLATERAL ATTACK

21.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

22.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

23.  This agreement does not affect in any way the right of the USAO to appeal the sentence imposed by the Court.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

24.  Defendant agrees that, provided the Court imposes a total term of imprisonment on the count of conviction within or below the range corresponding to an offense level of 24 and the criminal history category calculated by the Court, defendant gives up the

13

right to appeal all of the following: (a) the procedures and
calculations used to determine and impose any portion of the
sentence; (b) the term of imprisonment imposed by the Court; (c) the
fine imposed by the Court, provided it is within the statutory
maximum; (d) to the extent permitted by law, the constitutionality or
legality of defendant's sentence, provided it is within the statutory
maximum; (e) the amount and terms of any restitution order; (f) the
term of probation or supervised release imposed by the Court,
provided it is within the statutory maximum; and (g) any of the
following conditions of probation or supervised release imposed by
the Court: the conditions set forth in Second Amended General Order
20-04 of this Court; the drug testing conditions mandated by 18
U.S.C. §§ 3563(a)(5) and 3583(d); the alcohol and drug use conditions
authorized by 18 U.S.C. § 3563(b)(7); and any conditions of probation
or supervised release agreed to by defendant in paragraph 2 above.

25. The USAO agrees that, provided (a) all portions of the
sentence are at or below the statutory maximum specified above and
(b) the Court imposes a term of imprisonment within or above the
range corresponding to an offense level of 24 and the criminal
history category calculated by the Court, the USAO gives up its right
to appeal any portion of the sentence.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

26. Defendant agrees that if, after entering a guilty plea
pursuant to this agreement, defendant seeks to withdraw and succeeds
in withdrawing defendant's guilty plea on any basis other than a
claim and finding that entry into this plea agreement was
involuntary, then (a) the USAO will be relieved of all of its
obligations under this agreement, including in particular its

14

obligations regarding the use of Cooperation Information; (b) in any investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant agrees that any Cooperation Information and any evidence derived from any Cooperation Information shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, or any federal rule, that any Cooperation Information or any evidence derived from any Cooperation Information should be suppressed or is inadmissible; and (c) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

27.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

28.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

<u>BREACH OF AGREEMENT</u>

29.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

a.   If defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea.

b.   The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty; (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime, including charges that the USAO would otherwise have been obligated not to criminally prosecute pursuant to this agreement; and (iii) will no longer be bound by any

1  agreement regarding the use of Cooperation Information and will be

2  free to use any Cooperation Information in any way in any

3  investigation, criminal prosecution, or civil, administrative, or

4  regulatory action.

5        c.   The USAO will be free to criminally prosecute

6  defendant for false statement, obstruction of justice, and perjury

7  based on any knowingly false or misleading statement by defendant.

8        d.   In any investigation, criminal prosecution, or civil,

9  administrative, or regulatory action: (i) defendant will not assert,

10 and hereby waives and gives up, any claim that any Cooperation

11 Information was obtained in violation of the Fifth Amendment

12 privilege against compelled self-incrimination; and (ii) defendant

13 agrees that any Cooperation Information and any Plea Information, as

14 well as any evidence derived from any Cooperation Information or any

15 Plea Information, shall be admissible against defendant, and

16 defendant will not assert, and hereby waives and gives up, any claim

17 under the United States Constitution, any statute, Rule 410 of the

18 Federal Rules of Evidence, Rule 11(f) of the Federal Rules of

19 Criminal Procedure, or any other federal rule, that any Cooperation

20 Information, any Plea Information, or any evidence derived from any

21 Cooperation Information or any Plea Information should be suppressed

22 or is inadmissible.

23     30.  Following the Court's finding of a knowing breach of this

24 agreement by defendant, should the USAO choose to pursue any charge

25 that was either dismissed or not filed as a result of this agreement,

26 then:

27

28

1          a.    Defendant agrees that any applicable statute of
2    limitations is tolled between the date of defendant's signing of this
3    agreement and the filing commencing any such action.
4          b.    Defendant waives and gives up all defenses based on
5    the statute of limitations, any claim of pre-indictment delay, or any
6    speedy trial claim with respect to any such action, except to the
7    extent that such defenses existed as of the date of defendant's
8    signing this agreement.

9              COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
10                            OFFICE NOT PARTIES

11        31.    Defendant understands that the Court and the United States
12   Probation and Pretrial Services Office are not parties to this
13   agreement and need not accept any of the USAO's sentencing
14   recommendations or the parties' agreements to facts or sentencing
15   factors.
16        32.    Defendant understands that both defendant and the USAO are
17   free to: (a) supplement the facts by supplying relevant information
18   to the United States Probation and Pretrial Services Office and the
19   Court, (b) correct any and all factual misstatements relating to the
20   Court's Sentencing Guidelines calculations and determination of
21   sentence, and (c) argue on appeal and collateral review that the
22   Court's Sentencing Guidelines calculations and the sentence it
23   chooses to impose are not error, although each party agrees to
24   maintain its view that the calculations in paragraph 17 are
25   consistent with the facts of this case.  While this paragraph permits
26   both the USAO and defendant to submit full and complete factual
27   information to the United States Probation and Pretrial Services
28   Office and the Court, even if that factual information may be viewed

                                  18

as inconsistent with the Factual Basis agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the Factual Basis agreed to in this agreement.

33. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

34. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

1    PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2        35.  The parties agree that this agreement will be considered

3    part of the record of defendant's guilty plea hearing as if the

4    entire agreement had been read into the record of the proceeding.

5    AGREED AND ACCEPTED

6    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
7    CALIFORNIA

8    E. MARTIN ESTRADA
     United States Attorney

9

10   _____        12/17/2024
     SUSAN HAR                         Date
11   Assistant United States Attorney

12   _____        12-16-2024
     JOSEPH BENZA III                  Date
13   Defendant

14   _____        12/16/24
     TOM YU                            Date
15   ED ROBINSON
     Attorneys for Defendant JOSEPH
16   BENZA III

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____        12-16-2024
JOSEPH BENZA III                        Date
Defendant

21

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am JOSEPH BENZA III's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____          12/16/24
TOM YU                              Date
ED ROBINSON
Attorney for Defendant JOSEPH
BENZA III

# Attachment  A

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>ATTACHMENT A</u>**

<u>FACTUAL BASIS</u>

**A.    Defendant Willfully Used Excessive Force Against Victim E.B. in**
**Retaliation for Victim E.B. Engaging in First Amendment-**
**Protected Activity**

1.    At all times relevant to this Factual Basis, defendant was a sworn law enforcement officer and deputy employed by the Los Angeles County Sheriff's Department ("LASD").  Defendant was assigned to work at LASD's Norwalk Station in Norwalk, California.

2.    Defendant knew that using excessive or unreasonable force against a civilian was against the law and LASD policy.  Defendant also knew that taking retaliatory force or action against an individual merely for expressing criticism of, or disrespect for, law enforcement officers was against the law and LASD policy.  Defendant knew that the gesture of extending the middle finger at, colloquially known as "flipping off" or a "flip-off," a law enforcement officer was an activity protected by the First Amendment of the Constitution of the United States.

3.    On February 10, 2023, as part of defendant's official duties for LASD, he was responding to calls for service during an overtime patrol shift.  Defendant was wearing his full LASD uniform and driving a marked LASD sports utility vehicle (the "SUV").

4.    At approximately 12:20 p.m. that day, defendant was in the area of Mystic Street and Guilford Avenue in South Whittier. Defendant received a call for service regarding a potential domestic violence disturbance and confirmed that he was en route to respond. Thereafter, defendant saw Victim E.B. driving a black Honda Civic. As Victim E.B. drove by defendant, Victim E.B. flipped off defendant.

1   In response, defendant abandoned the call for service he had

2   confirmed and instead began closely following Victim E.B. through a

3   residential neighborhood, at certain points reaching speeds of over

4   50 miles per hour.  Defendant closely followed Victim E.B. for

5   approximately 1.8 miles without attempting to stop Victim E.B. or

6   pull over Victim E.B.

7        5.   As defendant chased after Victim E.B., defendant called

8   Deputy A.  During the call, defendant told Deputy A that someone had

9   just flipped him off and that defendant was going to conduct a

10  traffic stop of that person.  Because defendant intended to use force

11  against Victim E.B., defendant further asked Deputy A to start

12  driving towards defendant's location.

13       6.   As defendant pursued Victim E.B., Victim E.B. called 911 to

14  report that he was being followed.  Victim E.B. advised the operator

15  that he had not been stopped or ordered to pull over and asked the

16  operator to verify whether the car that was following him was a real

17  police car.

18       7.   Victim E.B. eventually pulled into the parking lot of a

19  convenience store near the intersection of Mulberry Drive and Mills

20  Avenue and parked in a designated parking spot.  Defendant followed

21  Victim E.B. into the parking lot of the convenience store, parked his

22  SUV behind Victim E.B.'s car, and only then activated the SUV's

23  overhead lights.

24       8.   Defendant approached Victim E.B., who was exiting Victim

25  E.B.'s car.  Defendant told Victim E.B. that defendant had stopped

26  Victim E.B.  Victim E.B. denied that defendant had stopped Victim

27  E.B.  Without giving any commands to Victim E.B., defendant grabbed

28  Victim E.B.  Victim E.B. pulled away from defendant and said, "Don't

touch me." Defendant then violently body slammed Victim E.B. onto the ground. Once Victim E.B. was on the ground, defendant mounted Victim E.B., punched Victim E.B.'s head and face multiple times, and pressed Victim E.B.'s face into the pavement. Victim E.B. repeatedly screamed for help and shouted, "You're going to kill me!"; "I can't breathe!"; and "Please stop!"

9.   As a result of defendant's assault of Victim E.B., Victim E.B. sustained serious bodily injury, including suffering a concussion, contusions (bruising), and abrasions (cuts) and experiencing vomiting and head pain.

10.   In assaulting Victim E.B., defendant willfully deprived Victim E.B. of rights secured by the Constitution and laws of the United States, including the right to be free from the use of excessive and unnecessary force by a law enforcement officer and the right to be free from retaliation by a law enforcement officer based on activity protected by the First Amendment. But for defendant's intent and motive to retaliate against Victim E.B. for flipping-off defendant, defendant would not have pursued, stopped, or used excessive force against Victim E.B.

11.   Defendant acted under color of law. Defendant also acted willfully, with intent to deprive Victim E.B. of constitutional rights.

**B.   Defendant, Aided and Abetted by Sergeant 1, Falsified an LASD Incident Report in Order to Conceal Defendant's Retaliatory Motive and Use of Excessive Force**

12.   Later that same day, defendant went to Norwalk Station and began preparing his LASD incident report regarding his traffic stop of, and use of force against, Victim E.B. (the "Incident Report").

3

Defendant discussed with Deputy B and Sergeant 1 whether to include in the Incident Report why defendant began following Victim E.B., that is, because Victim E.B. flipped off defendant.  Sergeant 1 counseled defendant to omit that fact from the Incident Report.

13.  Between February 10 and February 11, 2023, defendant, aided and abetted by Sergeant 1, prepared the final version of the Incident Report, which was assigned Uniform Report Number ("URN") 023-01746-0492-057.

14.  Defendant, aided and abetted by Sergeant 1, intentionally omitted from the Incident Report any reference to Victim E.B. flipping off defendant in order to conceal that defendant had pursued, stopped, and used excessive force against Victim E.B. in retaliation for Victim E.B. flipping off defendant.

15.  In the Incident Report, defendant also lied about the reason he followed and eventually stopped Victim E.B., misleadingly stating that he conducted a traffic stop for obstructed driver view, in violation of the California Vehicle Code, purportedly based on a tree-shaped air freshener hanging from the rearview mirror of Victim E.B.'s car.  In reality, as defendant then knew, defendant pursued, stopped, and used excessive force against Victim E.B. in retaliation for Victim E.B. flipping off defendant.

16.  To further conceal defendant's violations of Victim E.B.'s constitutional rights and to create the misleading impression that defendant's use of force was justified, defendant, aided and abetted by Sergeant 1, falsely portrayed Victim E.B. as a threat to his physical safety in the Incident Report.  Specifically, the Incident Report falsely stated that Victim E.B. bit defendant's hand, clenched Victim E.B.'s teeth down with enough force to puncture defendant's

skin, and attempted to rip defendant's skin from his hand.  In
reality, Victim E.B. had not done any of these things.

17.  Defendant also falsely arrested Victim E.B. with mayhem, in
violation of California Penal Code section 203.  In reality, as
defendant then knew, Victim E.B. did not cause mayhem to defendant.

18.  In addition to disclosing to Sergeant 1 that defendant saw
Victim E.B. flip defendant off, defendant also disclosed that fact to
Sergeant 2 and Sergeant 3.  Sergeant 2 and Sergeant 3 counseled
defendant to omit that fact from the Incident Report.

**C.    Defendant Engaged in Other Obstructionist Conduct**

19.  After defendant and Sergeant 1 had falsified defendant's
Incident Report, including by omitting the fact of Victim E.B.'s
flip-off, on February 13 and 14, 2023, defendant and Sergeant 1
discussed whether Victim E.B. had recorded the flip-off on Victim
E.B.'s cellphone.  Defendant reassured Sergeant 1 that defendant had
looked at Victim E.B.'s cellphone after his use of force and did not
see it recording the flip-off.

20.  In July 2023, various media outlets reported on defendant's
use of force against Victim E.B.  On July 23, 2023, defendant
exchanged group text messages with Deputy C and Deputy D.

21.  In those group text messages, defendant, Deputy C, and
Deputy D discussed the media reports and the anticipated federal
investigation of defendant.  Defendant, Deputy C, and Deputy D
discussed the need to delete text messages on their personal
cellphones in light of the anticipated federal investigation.

22.  Three days later, on July 26, 2023, Deputy C sent a text
message to the same group to relay Sergeant 1's instruction for

1  defendant to "toss the phone," which defendant understood as a

2  directive to delete the data from his personal cellphone.

3      23.  Throughout 2024, Deputy C kept defendant apprised of Deputy

4  C's contacts with the FBI and the United States Attorney's Office

5  ("USAO").  Before Deputy C's interview with the FBI and the USAO in

6  September 2024, Deputy C and defendant discussed lying to federal

7  authorities in order to provide an innocuous explanation for their

8  text messages about Sergeant 1's directive to "dump" the cellphone,

9  including to falsely characterize the message as an instruction to

10  "dump" the cellphone into the cloud to preserve the data.  Deputy C

11  later confirmed to defendant that he planned to adopt that false

12  explanation when speaking with the federal authorities.

13  **D.   Defendant Lied to the FBI and the USAO to Further Conceal His**

14  **Crimes**

15      24.  On January 30, 2024, the FBI and the USAO interviewed

16  defendant regarding his use of force against Victim E.B.  At the

17  beginning of the interview, with counsel present, defendant was

18  advised that making materially false statements to the government was

19  a crime.  During the interview, defendant falsely stated that: (a) he

20  had not seen Victim E.B. or anyone else flip him off; (b) Victim E.B.

21  had bitten defendant; and (c) defendant had not discussed

22  substantively the contents of the Incident Report with anyone as he

23  drafted it.  In fact, as defendant then knew, (a) defendant had seen

24  Victim E.B. flip him off and had retaliated against Victim E.B. with

25  excessive force because of it; (b) defendant knew Victim E.B. had not

26  bitten him; and (c) defendant substantively had discussed the

27  Incident Report with others, including with Sergeant 1, and

28  specifically had discussed the decision to omit from the Incident

Report that Victim E.B. had flipped off defendant and the decision to charge Victim E.B. with mayhem.  Defendant also knew that Sergeant 1 had drafted substantive portions of the Incident Report for defendant.